IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID KING, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-0113 |
| WCI OFFICERS, et al., | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on: (1) Defendants Officer Baumgardner, Officer Lavin, Lieutenant Smith, and WCI Officers'[1] Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21); (2) Defendants' Motion to File Under Seal (ECF No. 23); (3) Self-represented Plaintiff David King's Motion to Request an Appointment of Counsel (ECF No. 27); and (4) King's Motion to Strike Defendants' Reply to Plaintiff's Memorandum in Response to Motion to Dismiss or, in the Alternative, Motion

[1] In his Amended Complaint, King does not directly name any defendants either in the caption or elsewhere on the Court's complaint form. (See generally Am. Compl., ECF No. 5). Because he clearly named Lt. Smith, Ofc. Lavin, and Ofc. Baumgardner in the body of his Complaint, the Court directed that these individuals should be added to the docket as Defendants. (Mar. 20, 2023 Order at 1, ECF No. 6). Defendant "WCI Officers" was seemingly added to the docket when King filed his original Complaint, as no Defendants were named at all, and he simply alleged that "Western Correctional Institution Officers" committed the acts alleged in his Complaint. (See Compl. at 2, ECF No. 1). King was directed to amend his Complaint, in part, to name proper defendants, and he was forewarned that his Amended Complaint would replace his original Complaint. (See Jan. 31, 2023 Order at 1–3, ECF No. 4). Thus, the Defendants named in the Amended Complaint are who King sues and the Clerk will be directed to remove Defendant "WCI Officers" from the docket.

for Summary Judgment (ECF No. 29). The Court will construe Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21) as a Motion to Dismiss with respect to claims against the Defendants in their official capacities and King's Fourteenth Amendment claims. The Court will construe the Motion as a Motion for Summary Judgment with respect to King's Eighth Amendment claim. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment; grant Defendants' Motion to Seal; grant King's Motion to Request an Appointment of Counsel; and deny King's Motion to Strike Defendants' Reply to Plaintiff's Memorandum in Response to Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[2]

---

[2] Following Defendants' Reply in support of their Motion to Dismiss or, in the Alternative, for Summary Judgment, King submitted a document to the Court titled "Granting Order to Strike Defendants Reply to Plaintiffs Memorandum in Response to Motion to Dismiss or in Alternative Motion for Summary Judgment." (ECF No. 29). It was construed and docketed as a Motion to Strike the Defendants' Reply; however, the substance of the document provides no reason why the Court should strike the Reply. (Granting Order to Strike Defs.' Reply to Pls.' Mem. in Response to Mot. to Dismiss or in Alternative Mot. for Summ. J ["Pl.'s Mot. to Strike"] at 1, ECF No. 29). Instead, King reasserts his position that his rights were violated and that the force administered by the Defendants was excessive. (Id.). He states that a genuine issue of material fact exists concerning his "interview" by the Defendants in a secluded property room, instead of at his cell. (Id.). King asks for "the Court's permission to be granted summary judgment." (Id.). Because King provides no basis for either of the things he appears to seek through this document, to the extent King intended this as a Motion either to strike the Defendants' Reply or to award him summary judgment, it will be denied.

# I. BACKGROUND

## A. King's Allegations[3]

Self-represented Plaintiff David King, a former state inmate who is not currently incarcerated, filed this Complaint in accordance with 42 U.S.C. § 1983 alleging sexual assault and physical abuse while incarcerated at Western Correctional Institution. (Am. Compl. at 2–3, ECF No. 5). Specifically, King names Lieutenant Smith, Officer Lavin, and Officer Baumgardner as Defendants. (Id.).

King alleges that on April 12, 2021, he did not "cuff up to accept a[n] inmate as a cellmate inside the cell with" him. (Id. at 2). Less than "three minutes" after King's refusal, Defendants Lt. Smith, Ofc. Lavin, and Ofc. Baumgardner opened the cell door, handcuffed King, and "dragged" him out of the cell. (Id.). King alleges that Defendants then took him to a "secluded area" where they sexually assaulted, beat, and maced him. (Id. at 2). King states that Defendants referred to their misconduct as a "wellness check." (Id. at 2–3). Thereafter, King was transferred to North Branch Correctional Institution (NBCI). (Id. at 3). King avers that prior to these events, Ofc. Lavin attempted "multiple times" to assign King a cellmate, but King always refused. (Id.) King claims that the forgoing acts violated his Eighth and Fourteenth Amendment rights. (Id. at 4–5). He seeks monetary damages from each Defendant in their "individual and official" capacities. (Id. at 4).

[3] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

**B. Defendants' Response**

Defendants filed a Motion seeking dismissal of the claims against them, or alternatively, summary judgment in their favor. (Mem. Supp. Defs.' Mot. Dismiss, or in the Alternative, Mot. Summ. J. ["Defs.' Mot."], ECF No. 21-1). They argue: (1) the Eleventh Amendment bars suit against the Defendants in their official capacities; (2) the force utilized by Defendants was not excessive, nor does the evidence support that King was sexually assaulted; and (3) King has failed to state a claim for a violation of his Fourteenth Amendment rights. (Id. at 6–7, 11). Defendants offer a series of exhibits, including video exhibits,[4] in support of these arguments.[5] (See ECF Nos. 21-2 through 21-6).

First, Defendants offer a Memorandum written by Defendant Lt. Smith on the date of the incident, April 12, 2021, regarding the use of force involving King. (WCI Records at 2, ECF No. 21-2). The report indicates that King refused a housing assignment earlier in the day and "was laying on his bunk not responding" to staff communication. (Id.). Because of his unresponsiveness, Officers Lavin and Baumgardner entered his cell to "conduct a

[4] Defendants filed a Supplement to their Motion which attests that King was provided with an opportunity to view the video evidence included with their Motion. (Suppl. Defs.' Mot. at 1–2, ECF No. 25). They include the Declaration of Benjamin Bradley, case manager at NBCI, who states that on September 27, 2023, King was afforded an opportunity to view the videos, and was told he would be permitted to view them as many times as he would like. (Bradley Decl. ¶ 3, ECF No. 25-1). Bradley claims that King watched each video a single time. (Id.). Bradley further notes that while watching the videos, King "voiced displeasure with the length of the videos, and stated . . . more happened before this because I refused to take a cell partner." (Id. ¶ 4).

[5] Defendants include the declaration of Jason D. Clise, Assistant Litigation Coordinator at WCI, attesting to the veracity of the exhibits contained in ECF No. 21-2. (WCI Records at 2, ECF No. 21-2).

wellness check." (Id.). The officers placed King in hand restraints to escort him to the Housing Unit 4 property room area where they intended to "interview" him. (Id.). Just as they arrived at the entrance to the property room, "King tensed up and attempted to pull away" from the officers. (Id.). This struggle caused them to take King "to the floor against the side of the strip search cage." (Id.). The officers ordered King to stop resisting but instead he began spitting and making threats to harm WCI staff members. (Id.). Ofc. Baumgardner then disbursed a burst of pepper spray in King's face, which prompted King to comply with the officers' orders. (Id.). King was then assisted to his feet and secured in the property room strip search cage. (Id.). Photographs were taken, and King declined to provide an inmate statement. (Id. at 2, 11). Nurse B. Mace arrived to assess King, who had an abrasion on his head and had been exposed to pepper spray. (Id. at 2). King refused treatment and a shower, authorized Nurse Mace to sign a release of responsibility on his behalf, and demanded to be taken back to his cell. (Id. at 2, 14). He was placed on administrative segregation pending adjustment, and then transferred to NBCI for rehousing. (Id. at 2). The report indicates that "[n]o video evidence was captured due to the absence of cameras" in the property room. (Id.).

Next, Defendants offer Lt. Smith's Investigator's Summary completed on April 12, 2021, which reviewed the above facts, found that "staff acted appropriately," and recommended "no further action." (Id. at 3–4). Defendants also provide copies of the Notice of Inmate Rule Violation provided to King following this incident, which charge

him with committing assault or battery on staff, making threats that include using physical harm, and disobeying an order. (Id. at 12).

Defendants also provide a copy of the report generated by the Intelligence and Investigative Division ("IID") of the Department of Public Safety and Correctional Services ("DPSCS") following this incident.[6] The report indicates that, upon arrival to NBCI on April 12, 2021, King was given a Prison Rape Elimination Act ("PREA") intake interview where he scored at risk for victimization. (Apr. 13, 2021 Investigation Report at 2, ECF No. 21-5). During the interview, King reported that he was assaulted by WCI officers. (Id.). More specifically, he stated that "unidentified" officers entered his cell and grabbed his genitals. (Id.). Afterwards, he was handcuffed and escorted to a private area where he was pepper sprayed, assaulted, and threatened further harm if he sought medical assistance. (Id.). The IID report also recounts the use of force reports and notice of inmate rule violations recounted above. (Id. at 2–5). The IID investigator also reviewed video evidence. (Id. at 4).

On April 20, 2021, the investigator interviewed King. (Id. at 4). During this interview, King indicated that "he was not physically or sexually assaulted while inside [his] cell". (Id.). King reported that the officers picked him up to transport him to the property room. (Id.). When challenged on this by the investigator, as in the video it "appeared as if he picked his feet up from the floor on his own will[,]" King stated that he

[6] Defendants provide the declaration of Britt Brengle, Administrator and Custodian of Records for DPSCS IID, attesting to the veracity of the IID report. (Apr. 13, 2021 Investigation Report at 1, ECF No. 21-5).

did so because he did not have shoes on and did not want to walk barefoot on the tier. (Id.). Once inside the property room, King alleges that the officers escorting him threw him into the holding cage, kicked him, and grabbed his genitals. (Id.).

On June 1, 2021, the investigator reviewed the NBCI serious incident report regarding King's allegation of a "PREA related incident." (Id. at 5). Therein, King reported he was pepper sprayed and physically beaten in a secluded area. (Id.). Specifically, he is quoted as saying that unknown officers "bent [him] over and slammed and grabbed [him] by [his] growings." (Id.).

On July 28, 2021, the IID investigator interviewed Defendant Ofc. Lavin. (Id.). He stated that they entered King's cell because King was non-responsive and handcuffed him without incident. (Id.). While transporting him to the property room, King became combative, which resulted in the officers forcing him to the floor to regain control where King struck the side of the holding cage. (Id.). In response to King's attempts to spit at the officers, Ofc. Baumgardner pepper sprayed King, at which point he complied and was secured in the holding cage. (Id.). Ofc. Lavin maintains that King was never struck or sexually assaulted. (Id.).

Based on all evidence reviewed, the IID investigator concluded that King's "PREA allegation is unfounded." (Id.). The decision was reached in part because "King's testimony is inconsistent." (Id.). Initially, he reported that his genitals were grabbed in his cell, and later that this occurred in the property room. (Id.). Moreover, King never reported the PREA allegation to WCI staff; he could not identify who allegedly assaulted him; and the

officers denied the allegations. (Id.). Additionally, the investigator found King's other assault claims to be similarly unfounded. (Id.).

Defendants also submit a copy of the Inmate Hearing Record from April 27, 2021.[7] (Inmate Hr'g Rec. at 2, ECF No. 21-6). The hearing officer reviewed Ofc. Baumgardner's statement, video, pictures of King and the officers, and the use of force report and investigation summary. (Id. at 3). At the hearing, King explained that earlier in the day the officers told him he would be getting a cellmate, which he refused. (Id. at 4). He further stated that he was beat up and sexually assaulted, and when he "asked [the officers] why . . . they said it was because [he] had refused a cellmate." (Id.). He maintained that he did not disobey a direct order. (Id.). He simply did not want to talk to the officers. (Id.).

Based on the evidence presented, the hearing officer made the following findings of fact: (1) King's actions constituted assault under the Code of Maryland Regulations (COMAR) when he pulled away from the officers causing them to "f[a]ll to the floor . . . against the cage;" (2) King disobeyed an order when he refused to stop spitting and resisting staff; and (3) the Institution did not meet the requisite burden of proof to charge King under Rule 104 because they failed to indicate the specific threats made. (Apr. 13, 2021 Investigation Report at 5). King was sanctioned based on the guilty findings. (Id. at 6).

[7] Scott Rowe, Correctional Hearing Officer Supervisor, attests to the truth and accuracy of this record. (Inmate Hr'g Record at 1, ECF No. 21-6).

Finally, Defendants submit two videos with their Motion, which the Court has reviewed.[8] The first video (Surveillance Video Rear, ECF No. 21-3) depicts Housing Unit 4, B tier, from the lower rear angle. There is a date stamp on the video which reads 4/12/21, and a time stamp on the video which begins at 11:34:01. (Id.). At 11:34:04, officers can be seen at the top of the video frame walking down a hallway. (Id.). At 11:34:28 all officers arrive in front of a cell door. (Id.). They appear to be speaking with the occupant of the cell, though the video does not appear to have audio, and the interior of the cell cannot be seen. (Id.). At 11:35:23, they appear to open the cell door, and three officers enter. (Id.). At 11:35:39, they exit the cell with what appears to be a person they are escorting and proceed down the hall. (Id.).

The second video, (Surveillance Video Front, ECF No. 21-4), depicts Housing Unit 4, B tier, from the lower front angle, which appears to be the opposite end of the hallway

---

[8] Along with their Motion, Defendants submitted a Motion to Seal ECF Nos. 21-3 and 21-4, which contain the video evidence in this case. (Mot. to File Under Seal, ECF No. 23). In support thereof, they argue surveillance videos are sensitive in nature, contain security information, and implicate privacy concerns. (Id. at 1). Though not raised by Defendants, the Court also notes that the video contained at ECF 21-4 depicts individuals who are not involved in this case descending a staircase. (Surveillance Video Front at 11:35:09–11:35:17). Local Rule 105.11 (D.Md. 2018), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The Rule balances the public's common law right to inspect and copy judicial records and documents with competing interests that sometimes outweigh the public's right. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Given the reasons advanced by Defendants, the limited scope of the request, and the privacy of the unidentified inmates in ECF 21-4, the Court will grant Defendants' Motion, and the video exhibits shall remain under seal.

from the first video. There is a date stamp on the video which reads 4/12/21, and a time stamp on the video which begins at 11:34:01. (Id.). At 11:34:08, four unidentified officers enter the video frame and walk down a hall, stopping at what, presumably, is a cell door. (Id.). The officers are barely within the frame of the video. (Id.). The officers' feet can be seen standing in the hallway until 11:35:24, at which point two to three of them appear to enter the cell. (Id.). At 11:25:39, they emerge from the cell and appear to have an additional person with them. (Id.). As they move down the hall closer to the camera, the person comes in to view—he is being carried by two officers who are holding him under his arms, his hands appear to be handcuffed, and his feet are lifted off the floor. (Id.). Other than lifting his feet, his head is down, and he does not appear to be resisting the officers. (Id.). The video does not appear to have audio. (Id.).

**C. King's Opposition Response**

King opposed the Defendants' Motion. (Pl.'s Mem. Resp. Opp'n Defs' Mot. ["Pl.'s Opp'n"], ECF No. 26). Principally, King argues here that disputes of material fact exist which preclude the entry of summary judgment. (Id. at 1–2). Along with his response, King includes a verified declaration. (King Decl., ECF No. 26-1). Therein, King presents his recollection of events, which differs materially from the narrative offered by Defendants. He states that on April 12, 2021, Defendants came to his door and asked him to approach the door so that he could be handcuffed because he was receiving a cellmate. (King Decl. & Martin Aff. at 4, ECF No. 26-1). King states that he spoke with the officers, explained his fears regarding Covid-19, and informed them Sergeant Benson had agreed to allow him

to house with another inmate, who he had requested to share a cell with, rather than the inmate the Defendants were suggesting. (Id. at 4). He states that he asked to speak with Sgt. Benson, but was denied, and the Defendants left his cell. (Id. at 5). He states they returned "within seconds" and opened his cell door and "rushed inside . . . pushing and shoving." (Id.). The officers then grabbed King's arms and handcuffed him, forcing him out of the cell. (Id.). He states that he lifted his feet because he was "in a very awkward position with only shower shoes on [his] feet still handcuffed," and he was "unable to keep up walking" with the officers. (Id.)

Once inside the "secluded area," King states that Ofc. Lavin grabbed the back of his neck and screamed at him to keep his head down, while Ofc. Baumgardner and Lt. Smith hit him in the back of the head. (Id. at 6). He states that the officers continued to beat him for "at least two and a half minutes" while he was handcuffed. (Id.). He avers that next Ofc. Lavin grabbed his genitals and stated, "I'm so sick and tired of your spook ass keep writing ARP's on C.O.'s" and threw him into the side of the strip search cage. (Id.). King sustained an injury to his forehead. (Id.) Afterwards, he was assisted to his feet, and then secured in the strip search cage. (Id.). He asserts that he was locked in the strip search cage, and handcuffed when Ofc. Baumgardner pepper sprayed him in the face. (Id.). He states that he felt "vulnerable" because he was handcuffed and could not shield himself from the pepper spray. (Id.). He states that Baumgardner emptied the entire can of pepper spray. (Id.). King stood there, handcuffed, for approximately 35 minutes attempting to "wipe some of the blood and pepper spray" from his face. (Id.). The officers told King they would

beat him again if he requested medical attention so when it was offered, he refused. (Id. at 5). Thereafter, King states he was sent to NBCI, at which point he sought medical attention. (Id.). He maintains that he "did not spit at any prison employees [and he did not] threaten to harm any prison employees" at WCI. (Id. at 11).

King also includes the affidavit of inmate Michael D. Martin, who states that he was housed at WCI in Housing Unit 4, B-Tier on the date of the incident. (Id. at 12). He recounts hearing officers remove an inmate from their cell that day, and then "heard intense screams coming from the hallway sounding as if someone was in . . . agonizing pain." (Id. at 13). Martin then "started coughing a lot [sic] from the smell of mace and pepper spray throughout the building." (Id.).

Finally, King submits his own documentary evidence with his opposition response. (ECF Nos. 26-2 through 26-16). They include: (1) a copy of his grievance form submitted to the Warden regarding this incident (ECF No. 26-2); (2) his appeal from the dismissal of his grievance to the Commissioner of Correction (ECF No. 26-3); (3) a letter from the Inmate Grievance Office (ECF No. 26-4); (4) an Inmate Request Form requesting that video of the incident be preserved (ECF No. 26-5); (5) a copy of his Notice of Inmate Disciplinary Hearing, the Notice of Inmate Rule Violation, and the Inmate Hearing Record (ECF No. 26-6); (6) a copy of a grievance form requesting preservation of video footage (ECF No. 26-7); (7) a Headquarters Appeal of Administrative Remedy Response (ECF No. 26-8); (8) a copy of a flier regarding PREA (ECF No. 26-9); (9) a document that appears to detail a portion of the administrative grievance process (ECF No. 26-10); (10) a

document that appears to be a DPSCS policy requiring all use of force actions to be videotaped (ECF No. 26-11); (11) pictures of King on April 12, 2021 while in the strip search cage (ECF No. 26-12); (12) a letter from the Office of the Commissioner regarding administrative remedies (ECF No. 26-13); (13) a medical order dated August 27, 2021 which places King on a "no work status" for 14 days (ECF 26-14); (14) a copy of an administrative grievance alleging NBCI staff are interfering with King's procedural due process rights (ECF No. 26-15); and (15) a dismissal of King's appeal to the Commissioner of Correction (ECF No. 26-16).

**D. Procedural History**

On January 13, 2023, King filed his original Complaint against Western Correctional Institution ("WCI") officers alleging that the was physically and sexually assaulted. (ECF No. 1). The Court granted King leave to file an Amended Complaint on January 31, 2023. (ECF No. 4). King filed an Amended Complaint naming Lt. Smith, Ofc. Lavin, and Ofc. Baumgardner as Defendants on February 10, 2023. (ECF No. 5).

On September 13, 2023, Defendants filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment and a Motion to Seal Exhibits B-1 and B-2 (ECF Nos. 21, 22, 23). The Court construes Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21) as a Motion to Dismiss with respect to King's Fourteenth Amendment claims and claims against Defendants in their official capacities; and as a Motion for Summary Judgment as to King's Eighth Amendment claim.

Defendants Supplemented their Motion on October 3, 2023. (ECF No. 25). On October 20, 2023, King filed an Opposition (ECF No. 26) and a Motion to Appoint Counsel. (ECF No. 27). Defendants filed a Reply on November 3, 2023. (ECF No. 28). On December 18, 2023, King filed a Motion to Strike Defendants' Reply. (ECF No. 29).

## II. DISCUSSION

### A. Conversion

Defendants style their Motion as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1)

notice; and (2) a reasonable opportunity for discovery. Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448–49 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. V. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To sufficiently raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has

adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247 (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998) (internal quotation marks omitted)).

Here, both requirements for conversion are satisfied. First, Defendants styled their Motion as a motion in the alternative for summary judgment, (Defs.' Mot at 1), and submitted materials outside the pleadings for the Court's consideration, (ECF Nos. 21-2 through 21-6). Thus, King was on notice that the Court might resolve Defendants' Motion under Rule 56. See Moret, 381 F.Supp.2d at 464. Second, while King filed an Opposition, he did not include a request for more time to conduct further discovery. Therefore, King fails to "put[] the district court on notice of the reasons why summary judgment [is] premature." See Harrods, 302 F.3d at 245. Accordingly, the Court will treat Defendants' Motion as one for summary judgment as it relates to King's Eighth Amendment claim.

## B. Motion for Summary Judgment

### 1. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her

favor without weighing the evidence or assessing the witnesses' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (cleaned up). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed.R.Civ.P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 249–50.

**2. Analysis**

King alleges that Defendants Smith, Baumgardner, and Lavin acting in their individual and official capacities used excessive force against him and sexually assaulted him in violation of the Eighth Amendment. (Am. Compl. at 2). Defendants maintain that they are entitled to summary judgment on this claim. (Defs.' Mot. at 9). At bottom, the

Court finds that there are genuine disputes of material fact that preclude an entry of summary judgment on this claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996), overruled on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. Williams, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. Wilkins, 559 U.S. at 39. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. at 37 (quoting Hudson, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. Id. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Here, King alleges that, while handcuffed and posing no threat to the Defendants, he was beaten, maced, and sexually assaulted. (King Decl. & Martin Aff. at 6–7). Defendants, for their part, deny that any force used was excessive. (Defs.' Mot. at 7, 9). Although Defendants argue that the record in this case "clearly contradicts" King's version of events (Id. at 9), the Court disagrees. From the video evidence submitted by Defendants, it is not clear that King was struggling, resisting, or otherwise fighting the officers. (See Surveillance Video Front at 11:35:40–49; Surveillance Video Rear at 11:35:39–49). The video does show him lifting his feet, but construing the record in the light most favorable to King, as the Court must, this was done because he was held in an awkward position and did not have proper footwear. (See Surveillance Video Front at 11:35:40–49). Additionally, it is not clear to the Court why King needed to be taken to the property room where no cameras were present in the first place. Further, the record before the Court also contains King's verified declaration maintaining that he was beaten and sexually assaulted by the

Defendants and injured as a result. (Pl.'s Opp'n at 1–2; King Decl. & Martin Aff. at 6–7). Additionally, King puts forth his own record evidence, including an affidavit of a fellow inmate attesting to the impact of the pepper spray used even down the hall. (King Decl. & Martin Aff. at 13).

Defendants argue in their reply that King's affidavit is self-serving, and thus should not be relied upon. (Defs.' Reply to Pl.'s Opp'n ["Defs.' Reply"] at 6, ECF No. 28). In support thereof, they principally rely on an unreported case in this Court, Roberts v. Durst, No. AAW-09-1385, 2010 WL 3703296, at *5 (D.Md. Sept. 16, 2010), aff'd sub nom, Roberts v. Farris, 445 F.App'x 689 (4th Cir. 2011). That case is readily distinguishable from the current case. There, during a "routine inquiry in chow hall" in the presence of many other inmates, the Plaintiff became combative with staff. Id. at *4. As a result, he was handcuffed and escorted to his cell. Id. The plaintiff in Roberts asserted that the defendants intentionally over-tightened the handcuffs, twisted his wrists, and pulled his arms through the feed slot of his cell, causing injury. Id. There, reviewing the evidence, the Court found that "the evidence supports Defendants' claim that the force was applied in a good faith effort to impose discipline." Id. at *5. Here, King's version of events wholly differs from that of the Defendants. And the evidence advanced by the Defendants, particularly the video evidence, does not clearly depict any resistance from King, and thus does not unequivocally support Defendants' version of events. The Court is not persuaded by Defendants' insistence that King's affidavit is purely self-serving.

In light of the record before it, the Court finds summary judgment to be inappropriate. The record advanced by Defendants fails to meet their burden of demonstrating that there are no genuine issues of material fact present in this case. Where, as here, the record is inconclusive as to whether any application of force was excessive and without legitimate cause, there exists a genuine dispute of material fact. The issue requires credibility determinations not appropriate for resolution on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Accordingly, Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, construed as to King's Eighth Amendment claims as a Motion for Summary Judgment, will be denied as to King's Eighth Amendment claims. Further, although Defendants separately argue that "[t]he [e]vidence does not [s]upport Plaintiff's [c]ontention that [h]e was [s]exually [a]ssaulted," (Defs.' Mot. at 9), the Court views these allegations as part and parcel of King's excessive force claim. A genuine dispute of material fact exists as to whether King was sexually assaulted. Therefore, these allegations, too, will be permitted to proceed.

## C. Motion to Dismiss

### 1. Standard of Review

In reviewing the Amended Complaint in light of a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to King. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc.

v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)); Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325–26 (4th Cir. 2001); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

**2. Analysis**

**a. Eleventh Amendment**

King raises claims against state employees Defendants Officer Baumgardner, Officer Lavin, and Lieutenant Smith. Defendants assert that any claims brought against them in their official capacities are barred by the Eleventh Amendment. (Defs.' Mot. at 6). The Court agrees. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. Brandon v. Holt, 469 U.S. 464, 471–72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. See Pevia v. Hogan, 443 F.Supp.3d 612, 632 (D.Md. 2020). Accordingly, Defendants are immune from suit for actions taken in their official capacity, and King's constitutional claims against Defendants for actions taken in their official capacity will be dismissed. In contrast, Defendants are not entitled to Eleventh Amendment immunity for actions taken in their individual capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

**b. Fourteenth Amendment**

Defendants argue King has failed to sufficiently allege a violation of his Fourteenth Amendment rights. (Defs.' Mot. at 11). The Court agrees. Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); Wilkinson v. Austin, 545 U.S. 209, 223 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative exercise. Beverati v. Smith, 120 F.3d 500, 502–03 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 483–84); accord Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration.") (cleaned up). "Wilkinson does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." Prieto v Clarke, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations combined with . . . harsh and atypical conditions" for Due Process protections to apply. Id. (emphasis in original) (citing Wilkinson v. Austin, 545 U.S. 209, 224–25 (2005)).

King's Complaint provides no factual support for his assertion that his Fourteenth Amendment right to due process was violated. (See Am. Compl. at 5). He simply baldly states that the incident on April 12, 2021 violated his "protected and established 14th Amendment right of 'violation of due process,' denial of due process, and deprivation of equal protection rights." (Id.). Because King has failed to state a claim, these allegations must be dismissed.

**c. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity for actions taken in their individual capacities. (Defs.' Mot. at 12). "Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Dist. of Columbia v. Wesby, 583 U.S. 48, 62–63 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." Id. at 63 (cleaned up).

The qualified immunity defense is unavailing here both because the constitutional right at issue was well-established at the time of the incidents at issue and because there exists a material dispute of fact regarding whether the conduct allegedly violative of King's constitutional right actually occurred. See Willingham v. Crooke, 412 F.3d 553, 559 (4th Cir. 2005). While it is true that qualified immunity is ordinarily determined at the summary judgment stage of litigation, see Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not, however, override the ordinary rules applicable to summary judgment proceedings." Willingham, 412 F.3d at 559 (citing Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992)). As noted, there are material facts in dispute in this case concerning whether Defendants' use of force violated King's constitutional rights. Thus, Defendants are not entitled to qualified immunity at this stage in the proceedings.

### D. Motion to Appoint Counsel

King moves this Court for the appointment of counsel. (Mot. to Req. Appointment of Counsel ["Mot. Appoint. Counsel"], ECF No. 27). In support thereof, he cites his indigency and his lack of familiarity with the law. (Id. at 1–2)

Appointed counsel is proper in exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances exist where plaintiff has a "colorable claim" and, considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." Jenkins v. Woodard, No. 22-6197, 2024 WL 3490967, at *4 (4th Cir. July 22, 2024) (quoting Whisenant v. Yuam, 739 F.2d 160, 162 (4th Cir. 1984)). Given the circumstances proffered by King (Mot. Appoint. Counsel at 1–2), as well as the fact that his Eighth Amendment claim against the Defendants will proceed to discovery on a complex area of constitutional law, the needs of the case are best served by appointing an attorney to represent King.[9] Accordingly, the Court will grant King's Motion to Appoint Counsel (ECF No. 27).

[9] King also filed a Motion for Extension of Time seeking a 45-day extension to "complete the process to require a new birth certificate, Maryland state identification card and social security card which is highly needed." (Pl.'s Mot. to Extend Time at 1, ECF No. 33). The Court is unfamiliar with the request and does not believe it pertains to this case. Thus, the Court will deny the Motion for Extension of Time (ECF No. 43) without prejudice.

## III. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21) will be construed as a Motion for Summary Judgment and denied in part as to King's Eighth Amendment claim. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21) is construed as a Motion to Dismiss and granted in part, as to claims against Defendants in their official capacities and King's Fourteenth Amendment claim. The Motion to Dismiss is denied as to King's Eighth Amendment claims against Defendants in their individual capacities. King's Motion to Appoint Counsel (ECF No. 27) will be granted. A separate Order follows. Entered this 9th day of September, 2024.

_____________/s/_________________
George L. Russell III
Chief United States District Judge